UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 06-60924-CIV-BROWN

THIS IS A CONSENT CASE

In Re NATIONSRENT RENTAL FEE
LITIGATION
_____/

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
AND INCORPORATED MEMORANDUM OF LAW**

**COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP**
STUART A. DAVIDSON
Florida Bar No. 0084824
*sdavidson@csgrr.com*
MICHAEL L. GREENWALD
Florida Bar No. 0761761
*mgreenwald@csgrr.com*
120 East Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
Telephone:  561/750-3000
561/750-3364 (fax)

**FREED & WEISS LLC**
PAUL M. WEISS
*paul@freedweiss.com*
ERIC BRUNICK
*ebrunick@freedweiss.com*
111 West Washington Street, Suite 1331
Chicago, Illinois  60602
Telephone: 312/220-0000
312/220-7777 (fax)

***Co-Lead Counsel for Plaintiffs and
Proposed Class Counsel***

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT  ...................................................................1

II.     STATEMENT OF FACTS  ........................................................................2

        A.      Summary of the Complaint ...........................................................2

        B.      Facts Discovered by Plaintiffs During Litigation  ..................................3

                1.      NationsRent's Corporate Office Set Uniform Policies and
                        Procedures For All of Its Locations ......................................4

                2.      The Terms of NationsRent's LDW Were Uniform Nationwide ................4

                3.      NationsRent Applied the Environmental Charge Uniformly
                        Nationwide ...........................................................6

        C.      The Proposed Class Representatives  .................................................7

                1.      David Jacov ............................................................7

                2.      Todd Horton ...........................................................9

                3.      Brad Barnard d/b/a Barnard Construction  ................................9

III.    ARGUMENT ..................................................................................10

        A.      Florida Law Governs This Action  ...................................................10

        B.      The Class Should Be Certified ......................................................11

                1.      Similar Class Actions Have Been Certified in Florida ............................12

                2.      Numerosity ...........................................................13

                3.      Commonality .........................................................13

                4.      Typicality ............................................................15

                5.      Adequacy ............................................................16

                6.      Plaintiff's Counsel Should Be Appointed Class Counsel .........................16

                7.      The Requirements of Rule 23(b)(3) Are Also Satisfied ..........................17

IV.     CONCLUSION ...............................................................................20

i

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Appleyard v. Wallace*,
    754 F.2d 955 (11th Cir. 1985) ........................................................................15

*Busby v. JRHBW Realty, Inc.*,
    513 F.3d 1314 (11th Cir. 2008) ............................................................12, 15, 18

*Cole v. Echevarria, McCalla, Raymer, Barrett & Frappier*,
    965 So. 2d 1228 (Fla. 1st DCA 2007) ..........................................................2, 12

*Collins v. Int'l Dairy Queen, Inc.*,
    168 F.R.D. 668 (M.D. Ga. 1996) ...................................................................14

*Cox v. Am. Cast Iron Pipe Co.*,
    784 F.2d 1546 (11th Cir. 1986) .....................................................................13

*CV Reit, Inc. v. Levy*,
    144 F.R.D. 690 (S.D. Fla. 1992) ...................................................................13

*Davis v. Cash for Payday, Inc.*,
    193 F.R.D. 518 (N.D. Ill. 2000) ....................................................................18

*Davis v. Powertel, Inc.*,
    776 So. 2d 971 (Fla. 1st DCA 2000) ............................................................2, 12

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)........................................................................................12

*Fabricant v. Sears Roebuck*,
    202 F.R.D. 310 (S.D. Fla. 2001) ...................................................................19

*Franze v. Equitable Assurance*,
    296 F.3d 1250 (11th Cir. 2002) .....................................................................12

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982).......................................................................................12

*Hamilton Partners, Ltd. v. Sunbeam Corp.*,
    No. 99-CV-8275, 2001 WL 34556527 (S.D. Fla. Jul, 03, 2001).....................16

*Heaven v. Trust Co. Bank*,
    118 F.3d 735 (11th Cir. 1997) .......................................................................11

*Holland v. Steele*,
    92 F.R.D. 58 (N.D. Ga. 1981) ........................................................................13

*In re Amerifirst Sec. Litig.*,
    139 F.R.D. 423 (S.D. Fla. 1991) ..................................................................13

*In re Disposable Contact Lens Antitrust Litig.*,
    170 F.R.D. 524 (M.D. Fla. 1996) .................................................................15

*In re Terazosin Hydrochloride Antitrust Litig.*,
    220 F.R.D. 672 (S.D. Fla. 2004) ..................................................................19

*In re Theragenics Corp. Sec. Litig.*,
    205 F.R.D. 687 (N.D. Ga. 2002) ..................................................................13

*Ingram v. Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001) ..................................................................14

*Johnson v. Rohr-Ville Motors*,
    189 F.R.D. 363 (N.D. Ill. 1999) ...................................................................18

*Kennedy v. Tallant*,
    710 F.2d 711 (11th Cir. 1983) ......................................................................15

*Kilgo v. Bowman Transp., Inc.*,
    789 F.2d 859 (11th Cir. 1986) ......................................................................13

*Kirkpatrick v. J.C. Bradford & Co.*,
    827 F.2d 718 (11th Cir. 1987) ...........................................................15, 16, 17

*Klay v. Humana, Inc.*,
    382 F.3d 1241 (11th Cir. 2004) ..........................................................13, 17, 19

*Kornberg v. Carnival Cruise Lines, Inc.*,
    741 F.2d 1332 (11th Cir. 1984) ....................................................................15

*Kreuzfeld A.G. v. Carnehammar*,
    138 F.R.D. 594 (S.D. Fla. 1991) ..................................................................13

*Lazar v. Hertz Corp.*,
    143 Cal. App. 3d 128, 191 Cal. Rptr. 849 (Cal. Ct. App. 1983).....................19

*Medine v. Wash. Mut., F.A.*,
    185 F.R.D. 366 (S.D. Fla. 1998) ..................................................................12

*Mills v. Foremost Ins. Co.*,
    511 F.3d 1300 (11th Cir. 2008) ....................................................................12

*Morrison v. Booth*,
    763 F.2d 1366 (11th Cir. 1985) ...................................................................................12

*Mortimore v. FDIC*,
    197 F.R.D. 432 (W.D. Wash. 2000) .............................................................................18

*Murray v. Auslander*,
    244 F.3d 807 (11th Cir. 2001) ...............................................................................12, 15

*Patrykus v. Gomilla*,
    121 F.R.D. 357 (N.D. Ill. 1988)....................................................................................13

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)......................................................................................................20

*Piazza v. Ebsco Indus., Inc.*,
    273 F.3d 1341 (11th Cir. 2001) ....................................................................................12

*Powers v. Stuart-James Co.*,
    707 F. Supp. 499 (M.D. Fla. 1989)...............................................................................20

*Powertel, Inc. v. Bexley*,
    743 So. 2d 570 (Fla. 1st DCA 1999) ............................................................................10

*Reese v. Miami-Dade County*,
    209 F.R.D. 231 (S.D. Fla. 2002)...................................................................................12

*Renaissance Cruises, Inc. v. Glassman*,
    738 So. 2d 436 (Fla. 4th DCA 1999).......................................................................2, 12

*Rutstein v. Avis Rent-A-Car Sys., Inc.*,
    211 F.3d 1228 (11th Cir. 2000) ..............................................................................11, 17

*Schatzman v. Talley*,
    91 F.R.D. 270 (N.D. Ga. 1981).....................................................................................16

*Steinhardt v. Rudolph*,
    422 So. 2d 884 (Fla. 3rd DCA 1982)............................................................................10

*Tapken v. Brown*,
    No. 90-961-CIV-MARCUS, 1992 WL 178984 (S.D. Fla. Mar. 13, 1992) ...............13, 14

*Turner Greenberg Assoc., Inc. v. Pathman*,
    885 So. 2d 1004 (Fla. 4th DCA 2004)................................................................2, 12, 18

*Turner v. Beneficial Corp.*,
    242 F.3d 1023 (11th Cir. 2001) ....................................................................................12

*Upshaw v. Ga. Catalog Sales, Inc.*,
    206 F.R.D. 694 (M.D. Ga. 2002) ...........................................................................19, 20

*Veal v. Crown Auto Dealerships, Inc.*,
    236 F.R.D. 572 (M.D. Fla. 2006)................................................................. *passim*

*Violette v. P.A. Days, Inc.*,
    214 F.R.D. 207 (S.D. Ohio 2003) ......................................................................18

*Weinberg v. Hertz Corp.*,
    116 A.D.2d 1, 499 N.Y.S.2d 693 (N.Y. App. Div. 1986) .................................18


## STATUTES

Fla. Stat. §§501.201, *et seq.* ....................................................................................1, 10

Fla. Stat. §501.202 .......................................................................................................1

Fla. Stat. §501.204 ...................................................................................................1, 10

Fla. Stat. §680.1081 .....................................................................................................1

Fla. Stat. §680.1081(1).................................................................................................10


## RULES

Fed. R. Civ. P.

    Rule 23 ............................................................................................... *passim*
    Rule 23(a)............................................................................................ *passim*
    Rule 23(a)(1) ...............................................................................................13
    Rule 23(a)(2) ...................................................................................13, 14, 15
    Rule 23(a)(3) ...............................................................................................15
    Rule 23(a)(4) .........................................................................................16, 17
    Rule 23(b) ...................................................................................................12
    Rule 23(b)(3).........................................................................2, 12, 17, 19
    Rule 23 (b)(3)(A)-(D) ................................................................................19
    Rule 23(g) ...........................................................................................2, 16, 17
    Rule 23(g)(1)(A).........................................................................................16
    Rule 23(g)(4)...............................................................................................16
    Rule 30(b)(6)................................................................................................3

S.F. Fla. L.R. 23.1 ........................................................................................................1

**SECONDARY AUTHORITIES**

Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure: Civil* § 1765 (1986)..........................................................................................16

Plaintiffs David Jacov ("Jacov"), Todd Horton ("Horton"), and Brad Barnard d/b/a Barnard Construction ("Barnard") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, respectfully request that this Court certify this action as a Class Action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure ("Rule 23") and Local Rule 23.1, on behalf of a class consisting of:

> All natural persons and business entities in the United States who rented equipment from any store owned or operated by NationsRent,[1] or any of its affiliated companies from June 1, 2003 until August 30, 2006 ("Class Period"), and who paid a Loss/Damage Waiver fee but received no corresponding benefit and/or an Environmental Charge (the "Class").[2]

In support of this motion, Plaintiffs state as follows:

## I.   PRELIMINARY STATEMENT

Plaintiffs seek to represent a class of thousands of consumers victimized by Defendant's violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§501.201, *et seq.* (the "FDUTPA"), the Uniform Commercial Code, Fla. Stat. §680.1081 ("UCC"), and Florida common law.[3]  Specifically, the FDUTPA was enacted to, *inter alia*, "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices." Fla. Stat. §501.202.  To that end, the FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.204.  Similarly, the UCC protects lessees from the enforcement of unconscionable contracts or contract clauses.  Fla. Stat. §680.1081.

This case is perfectly suited for class certification.  Indeed, courts routinely certify classes of victims of FDUTPA violations.  *See*, *e.g.*, *Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D.

---

[1]     "NationsRent" refers to, individually and collectively, Defendants NationsRent, Inc. and NationsRent Companies, Inc. (together, "Defendant").

[2]     Excluded from the Class are (1) Defendant, its parents, subsidiaries and affiliates, their directors, officers and employees, and members of their immediate families; and (2)  the Court, all persons within the third degree of relationship to the Court (as defined in Canon 3.C(3)(a) of the Code of Conduct for United States Judges), and the spouses of all such persons.

[3]     As explained more fully herein, NationsRent itself mandates the application of Florida law to *all* Class members' claims by virtue of a "choice of law" clause in its standard rental contracts.

572 (M.D. Fla. 2006); *Turner Greenberg Assoc., Inc. v. Pathman*, 885 So. 2d 1004 (Fla. 4th DCA 2004); *Cole v. Echevarria, McCalla, Raymer, Barrett & Frappier*, 965 So. 2d 1228 (Fla. 1st DCA 2007); *Renaissance Cruises, Inc. v. Glassman*, 738 So. 2d 436 (Fla. 4th DCA 1999); *Davis v. Powertel, Inc.*, 776 So. 2d 971 (Fla. 1st DCA 2000). This Court should do likewise. As discussed in more detail below, there can be no serious dispute that each of the requirements enumerated in Rule 23(a) – numerosity, commonality, typicality and adequacy – are satisfied in this case.

This Action also readily satisfies the predominance and superiority requirements of Rule 23(b)(3). The Consolidated Second Amended Class Action Complaint ("Complaint") [DE 61] alleges that the predominant issues are whether Defendant violated the law by charging consumers nationwide for the Loss/Damage Waiver ("LDW") fee and the Environmental Charge.[4] In addition, the expense of litigating each Class member's claim individually would be so cost prohibitive as to deny Class members a viable remedy. Accordingly, certification under Rule 23(b)(3) is appropriate because a class action is vastly superior to the other available methods for the fair and efficient adjudication of this action.

Finally, Plaintiffs have easily established their adequacy to represent the Class in this litigation. Plaintiffs have diligently prosecuted this case since its inception, and Plaintiffs' deposition testimony demonstrates unquestionably that they are fully cognizant of their rights and responsibilities as class representatives. Furthermore, Plaintiffs have hired counsel who are among the most experienced class action lawyers in the nation.

Accordingly, the requirements of Rules 23(a), (b)(3) and (g) are satisfied in this case. Plaintiffs respectfully request that the Class be certified, that Plaintiffs be certified as Class representatives, and that Plaintiffs' counsel be appointed Class counsel.

## II.     STATEMENT OF FACTS

### A.     Summary of the Complaint

On February 1, 2007, Plaintiffs filed their Complaint seeking to hold NationsRent liable for its unfair and deceptive business practices. The Complaint alleges that NationsRent, one of the largest full-service equipment companies in the United States prior to its purchase by Sunbelt Rentals, Inc. ("Sunbelt"), specializing in rentals and sales of equipment for homeowner,

---

[4]     NationsRent refers to this line item charge interchangeably as an "Environmental Charge" or an "Environmental Fee."

commercial, and industrial customers, charged its customers illegal LDW fees and/or Environmental Charges.  *See* Compl., ¶¶1-5, 23-24, 38-46.  That is, NationsRent has a policy of automatically adding an LDW fee to all of its rental contracts and an Environmental Charge to those rental contracts for equipment purportedly utilizing gas, oil, or other materials with potential adverse environmental impact.  The LDW purports to protect customers if a rented tool is damaged, lost, or stolen.  However, the Terms and Conditions of NationsRent's Rental Agreement contain a virtual smorgasbord of exclusions as to negate any coverage, rendering the LDW an objectively valueless product and, thus, deceptive and unconscionable.  In addition, the revenues generated by NationsRent for charging LDW fees dwarf NationsRent's expenses related to lose, damaged, and stolen equipment as to also render the LDW fee unconscionable.  Likewise, while the Environmental Charge is presented as a pass-through charge, in reality it is a hidden profit center for NationsRent.

Plaintiffs brought claims for violations of the FDUTPA and of the UCC, as well as breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, money had and received, and declaratory judgment. *Id.*, ¶¶61-117.  Plaintiffs sought on behalf of themselves and the Class all remedies available to them under Florida law, including actual damages, pre- and post-judgment interest, injunctive relief, declaratory relief, attorneys' fees, and costs. *Id.*, ¶¶72, 80, 87, 94, 103, 109, 116-117 & *ad damnum* clauses.  Defendants moved to dismiss the Complaint, which the Court sustained in its entirety on January 3, 2008 ("Order") [DE 103].

### B.    Facts Discovered by Plaintiffs During Litigation

Following the filing of the Complaint, Plaintiffs engaged in discovery, including a review of thousands of pages of documents produced by NationsRent and the taking of the sworn testimony of Charles Snyder ("Snyder"),[5] NationsRent's Executive Vice President and Chief Operating Officer, Thomas J. Hoyer ("Hoyer"),[6] NationsRent's former Chief Financial Officer, and Robert Schiller ("Schiller"),[7] NationsRent's former Controller.  Plaintiffs also participated in

---

[5]     Excerpts from the Snyder Deposition ("Snyder Dep.") are attached as **Exhibit A.** Snyder's deposition was conducted pursuant to Fed. R. Civ. P. 30(b)(6) and, accordingly, he was testifying as and on behalf of NationsRent.

[6]     Excerpts from the Hoyer Deposition ("Hoyer Dep.") are attached as **Exhibit B.**

[7]     Excerpts from the Schiller Deposition ("Schiller Dep.") are attached as **Exhibit C.**

the depositions of William Alomar ("Alomar")[8] and Daniel Murphy ("Murphy"), former NationsRent employees.[9]

### 1.    NationsRent's Corporate Office Set Uniform Policies and Procedures For All of Its Locations

NationsRent Executive Vice President and Chief Operating Officer Snyder explained that NationsRent emerged from bankruptcy in June 2003.  Snyder Dep. at 13:20.  In August 2006, NationsRent was acquired by Sunbelt Rentals, Inc.  *Id*. at 13.  At the time of the merger, NationsRent operated out of 269 locations, all of which were company-owned.  *Id*. at 18:16-23; 19:25; 20.  These NationsRent stores did not operate independently, however.  Rather, NationsRent's corporate office set the policies and procedures for all 269 NationsRent stores across the country.  *Id*. at 21.

### 2.    The Terms of NationsRent's LDW Were Uniform Nationwide

At the inception of each rental transaction, NationsRent presented a form adhesion contract to each customer ("Rental Agreement").[10]  The front side of the Rental Agreement contained information relating to the particular rental, including the type of equipment to be rented and the customer's name and contact information, as well as an itemization of the charges. *See* Ex. E.  The reverse side of the Rental Agreement, which was pre-printed, contained the "Additional Contract Terms and Conditions" that NationsRent imposed on the rental, including, *inter alia*, exclusions to NationsRent's LDW.   Specifically, the LDW was a mechanism purporting to cover the customer, in whole or in part, should the rented equipment become damaged, lost, or stolen during the rental period.  Snyder Dep. at 25.  The Rental Agreement, however, contained so many exclusions and pre-conditions as to negate any meaningful coverage.[11]  *See* Ex. E.

---

[8]    Excerpts from the Alomar Deposition ("Alomar Dep.") are attached as **Exhibit D.**

[9]    As detailed herein, Plaintiffs themselves also produced documents to NationsRent, responded to Interrogatories, and sat for depositions.

[10]    A true and correct copy of a NationsRent Rental Agreement is attached hereto as **Exhibit E**.  *See also* Snyder Dep., Ex. 5.

[11]    NationsRent's form Rental Agreement contains 16 enumerated exclusions to LDW coverage, including, *inter alia*, all damage to tires, damage during the "loading, unloading or

4

During the Class Period, the LDW fee was **mandatory** for all NationsRent customers unless they had a certificate of insurance on file that met certain conditions.  *Id*. at 48:20-25; 49:1-16.  The amount of the LDW fee was calculated from a fixed percentage of the rental price. Initially, NationsRent charged 12% of the rental amount for its LDW, but that percentage was increased several times during the Class Period, ultimately to 14% of the rental amount.  *Id*. at 48:7-11.  At all material times, the rates charged to customers for LDW were ***identical across all NationsRent stores***.  *Id*. at 48:12-16.  From 2001 until NationsRent was sold in August 2006, Defendant generated over $140 million in revenues from sales of LDW to approximately 1.4 million customers.[12]  *Id*. at 178:4-13.  Incredibly, NationsRent testified that it has virtually no knowledge of its LDW-related expenses, and that the rates for LDW were not established based on any loss ratios.[13]  *Id*. at 116.  Put simply, in establishing its LDW rates, NationsRent never analyzed its losses resulting from lost, damaged, or stolen equipment to determine whether there was any relationship at all between the cost of LDW and its benefit to customers.  *Id*.[14]

---

transportation" of the equipment, damage resulting from "lack or neglect of lubrication or other proper servicing," and damage from a collision with an "overhead object."  *See* Ex. E. Moreover, any violation of the numerous Additional Contract Terms and Conditions of the Rental Agreement amounts to a breach of the Rental Agreement and concomitant waiver of any LDW benefits.  *See id*., §§1.2, 1.11.  These pre-conditions include, *inter alia*, full compliance with the manufacturer's safety and operating instructions (which were not routinely provided to customers at the time of rental), and any use of the equipment by someone not deemed by NationsRent to be a "Properly Trained Individual."  *See id*., §1.2, *see also* Snyder Dep., Ex. 5. Collectively, as Plaintiffs will demonstrate at trial, these pre-conditions and numerous exclusions swallowed any meaningful coverage provided to customers, rendering LDW an objectively valueless product.

[12]     *See* NR 008460, attached hereto as **Exhibit F**;  *see also* Snyder Dep., Ex. 13.

[13]     According to Hoyer, NationsRent's former Chief Financial Officer, there was no correlation between the amount charged to a customer for LDW and NationsRent's expenses resulting from lost, damaged, or stolen property.  Hoyer Dep. at 55:9-20.  That is, NationsRent did not set its fees for LDW based on its related expenses.  *Id*.  Likewise, former Controller Schiller testified he did not know whether there was any relationship between the two.  Schiller Dep. at 61-62.

[14]     To that end – and no doubt to evade regulatory scrutiny – NationsRent took great pains to distinguish LDW from "insurance."  *See* Ex. E.  However, NationsRent admitted that LDW contains many of the attributes of insurance, including a specific list of coverages and a specific list of exclusions.  *See* Snyder Dep. at 26:10-12; 31:7-9.  Moreover, the only way a customer could decline LDW was if the customer had the requisite certificate of insurance on file.  Finally,

Moreover, NationsRent has **no knowledge** regarding how many, or what percentage, of its customers purchasing LDW ever received any benefit as a result. *Id*. at 116:20-24.

Importantly, because NationsRent utilized form contracts at all of its locations, the terms and conditions contained in its Rental Agreements at any given time were **identical** for all NationsRent customers throughout the United States. Snyder Dep. at 32:1-5; 67:1-17. To the extent any changes were made to the Rental Agreement's terms and conditions, changes were made **uniformly** across all NationsRent stores. *Id*. at 32:10-14. To that end, all of NationsRent's contracts with customers were pre-printed or system-generated. *Id*. at 32:15-21. In addition, as noted above, NationsRent's Rental Agreement mandates the application of Florida law to any disputes arising thereunder. *See* Ex. E, §4.10; Order at 5-7.

### 3. NationsRent Applied the Environmental Charge Uniformly Nationwide

Like the LDW, the Environmental Charge was also mandatory for NationsRent's customers. Snyder Dep. at 191:13-16. While NationsRent claims the Environmental Charge is intended to defray the company's cost of using, managing, and disposing materials that are regulated by federal, state, and local authorities, *id*. at 187:17-22, revenues from the Environmental Charge were simply added to NationsRent's general revenues. *Id*. at 193:21. Not surprisingly, therefore, NationsRent cannot determine whether **any** of the monies collected from any of the Plaintiffs or the Class were used to cover environmental-related expenses. *Id*. at 193:21-25; 194:1-6, 16-25; 195:9-13.[15] The amount of the Environmental Charge was determined, at management discretion, based on the type of equipment rented. *Id*. at 190:8-13. Snyder testified that NationsRent arrived at the amount of the Environmental Charge by using a "combination of what have you charged in the past, how much of an increase or decrease can be

---

internal NationsRent documents refer to the LDW interchangeably as insurance. *See* NR 005283-005288, attached hereto as **Exhibit G**; *see also* Snyder Dep., Ex. 2. NationsRent's distinction between LDW and insurance, then, is dubious at best and can only be for the purpose of avoiding state insurance regulations.

[15]   Former NationsRent employee Alomar testified about abhorrent environmental practices at one of NationsRent's Florida locations. Specifically, Alomar testified that he was instructed, on multiple occasions, to drain water contaminated with oil, gas, and other debris into a public sewer. Alomar Dep. at 45-46. In addition, Almoar was directed to dump dirt contaminated with oil and gas into a Waste Management dumpster. *Id*. at 51-52.

explained and justified with the customer, and also, changes were based on an assessment of our competition." *Id*. at 191:20-25; 192:1.   Tellingly, NationsRent did not compute the Environmental Charge based on the actual or projected environmental-related expenses incurred by the company.[16]

NationsRent maintained an internal fee schedule that set forth the particular Environmental Charge to be applied to each piece of equipment. *Id*. at 189:20-22; 190:6-7. This fee schedule was inputted into NationsRent's operating system and was ***uniformly applied*** at all NationsRent locations throughout the country. *Id*. at 191:6-9.   From 2001 until NationsRent was sold in August 2006, Defendant generated over $33 million in revenues from Environmental Charges from approximately 926,125 customers.[17] *Id*. at 202:15-24.

### C.   The Proposed Class Representatives

Discovery confirms that NationsRent has illegally charged up to 1.4 million customers for LDW and over 925,000 an Environmental Charge.  Plaintiffs Jacov, Horton, and Barnard fall squarely within this class of individuals and entities, as NationsRent has admitted.  Snyder Dep. at 45-47, 49, 186.

#### 1.   David Jacov

On or about June 27, 2004, Plaintiff Jacov rented a stump grinder from NationsRent at its Chamblee, Georgia location, Store No. 384-L, located at 4950 Peachtree Industrial Blvd., Chamblee, Georgia. *See* Compl., ¶28.   Pursuant to the Rental Agreement, Jacov paid NationsRent $150 to rent the stump grinder for a period of one day. *Id.*, ¶29.  In addition to the rental charge of $150, Jacov was charged $20.25 for the LDW and $7.50 for the Environmental Charge. *Id.*  Also on or about June 27, 2004, Jacov rented another stump grinder from NationsRent at the same Chamblee, Georgia location. *Id.*, ¶30.   Pursuant to the Rental Agreement, Jacov paid NationsRent $150 to rent the second stump grinder for a period of one day. *Id.*, ¶31.  In addition to the rental charge of $150, Jacov was charged $20.25 for the LDW and $7.50 for the Environmental Charge. *Id.*

---

[16]     Snyder testified that while the Environmental Charge "is typically not optional, [] there were customers, typically large customers, where environmental fees were not charged based on commercial negotiations with those customers."  *Id*. at 188:22-25.  Those customers who were not charged either an Environmental Charge or LDW are not members of the proposed Class.

[17]     *See* NR 008461, attached hereto as **Exhibit H**; *see also* Snyder Dep., Ex. 13.

Subsequently, on five other occasions – on or about August 11, 2004, October 27, 2004, January 7, 2005, January 10, 2005, and March 25, 2005 – Jacov rented various equipment from NationsRent at its Chamblee, Georgia location. *Id.*, ¶32.  On those five additional occasions, Jacov paid NationsRent a total of $762 to rent various equipment. *Id.*, ¶33.  In addition to the total rental charges of $762, Jacov was charged a total of $102.86 in LDW fees and $42.50 in Environmental Charges. *Id.*  Accordingly, Plaintiff Jacov is a member of the proposed Class he seeks to represent.

Moreover, Jacov has demonstrated his ability and desire to serve as a representative of the Class.  Not only has Jacov produced documents to NationsRent, responded to interrogatories, sat for a deposition in April 2008, and maintained regular contact with his counsel regarding the case, but he made crystal clear at his deposition that he is committed to prosecuting this case on behalf of himself and his fellow Class members.

With respect to Jacov's knowledge of his responsibilities as a class representative and willingness to expend a significant amount of his personal time – which he has done thus far – prosecuting this case on behalf of the Class, Jacov testified as follows:

> Q.    What else; other than being here at this deposition, what are your duties to the Class?
>
> A.    Do whatever I got to do until justice comes out.
>
> *        *        *
>
> Q.    But do you  know who you're trying to represent as a Class Representative?
>
> A.    Any customer of NationsRent that ever rented from them and signed [sic] a Waiver Fee and paid the Environmental Fee.
>
> *        *        *
>
> Q.    Are you prepared to travel to Miami to serve as a Class Representative at a trial in this case?
>
> A.    Yes.
>
> Q.    Even if that takes two weeks?
>
> A.    Sure.

Deposition of David Jacov ("Jacov Dep.") taken April 11, 2008, at 86:22-25; 88:2-6; 96:14-19.[18]

Accordingly, Jacov is an adequate class representative.

---

[18]    Excerpts from the Jacov Deposition are attached as **Exhibit I**.

### 2.    Todd Horton

Like Jacov, Horton is also a member of the Class he seeks to represent.  On or about May 28, 2006, Horton rented a 100-foot "Electric Eel" sewer snake from NationsRent at its Columbus, Ohio location, Store No. 236-L Easton, located at 4149 Morse Crossing.  *See* Compl., ¶34.  In addition to the rental charge of $50.00, Horton was charged $6.75 for the LDW Fee and $2.50 for the Environmental Charge. *Id.*, ¶35.  Accordingly, Plaintiff Horton is a member of the proposed Class he seeks to represent.

Moreover, Horton has demonstrated his ability and desire to serve as a representative of the Class.  Not only has Horton produced documents to NationsRent, responded to interrogatories, sat for a deposition in April 2008, and maintained regular contact with his counsel regarding the case, but he made clear at his deposition that he is committed to prosecuting this case on behalf of himself and his fellow Class members.

With respect to Horton's knowledge of his responsibilities as a class representative, Horton testified as follows:

Q.    Now, you understand that you're one of the class representatives in this lawsuit; correct?

A.    Yes, that's correct.

Q.    What's your understanding of what that means in terms of a responsibility for you?

A.    I have a responsibility as the class – or as one of the class representatives to stand up, to stand in the shoes of other people that have had similar experiences with renting from NationsRent where they too have been charged for the environmental fees and the mandatory damage waiver fees. I have the responsibility to see this through to the end.

Deposition of Todd Horton ("Horton Dep.") taken April 1, 2008, at 43:15-25; 44:1-2.[19]

Accordingly, Horton would make for a more than adequate class representative.

### 3.    Brad Barnard d/b/a Barnard Construction

Barnard, like Horton and Jacov, is also a member of the Class he seeks to represent.  To that end, on or about December 9, 2005, Barnard rented a NAMCO dehumidifier from NationsRent at its San Marcos, Texas location, Store No. 318-L San Marcos, located at 2211 IH 35 South, Ste. 100.  *See* Compl., ¶36.  In addition to the rental charge of $200.00, Barnard was

---

[19]    Excerpts from the Horton Deposition are attached as **Exhibit J**.

9

charged $29.00 for LDW. *Id.*, ¶37.  In addition, Barnard testified that he was charged an Environmental Charge by NationsRent in a prior rental transaction.  *See* Deposition of Brad Barnard ("Barnard Dep.") taken April 4, 2008, at 67:9-25; 68:1-25; 69:1-3.[20]   Accordingly, Barnard is a member of the proposed Class he seeks to represent.

Moreover, like Horton and Jacov, Barnard has demonstrated his ability and desire to serve as a representative of the Class.  He has produced documents to NationsRent, responded to interrogatories, sat for a deposition in April 2008, and maintained regular contact with his counsel regarding the case.  In addition, Barnard possesses all of the attributes one would hope to see in a class representative.  Barnard made clear at his deposition that he is committed to prosecuting this case on behalf of himself and his fellow Class members:

> Q.   Okay. Is it your desire to be the class representative in this lawsuit?
>
> A.   Yes, it is.
>
> Q.   Why?
>
> A.   To get this thing settled to where it's fair and equitable to everybody that's involved.
>
> Q.   What is your understanding of a class representative?
>
> A.   To represent the masses of the customers of NationsRent that have had – paid these fees and to represent them wholly.
>
> *       *       *
>
> Q.   And this is a little bit – we're kind of going over a little bit of an earlier area again, but tell me in your words what you want out of NationsRent in this lawsuit.
>
> A.   To refund the loss damage waiver charges and to refund the environmental fees.

Barnard Dep. at 81:3-13; 87:18-24.

## III.   ARGUMENT

### A.   Florida Law Governs This Action

Plaintiffs' Complaint seeks redress under the following causes of action: (1) violations of the FDUTPA, Fla. Stat. §501.201, *et seq.*,[21] (2) violations of the UCC,[22] (3) breach of contract,

---

[20]   Excerpts from the Barnard Deposition are attached as **Exhibit K**.

[21]   The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.204.  In short, NationRent's LDW fee is deceptive and unfair because the litany of

(4) breach of implied covenant of good faith and fair dealing, (5) unjust enrichment, and (6) money had and received.  Plaintiffs also seek to obtain a declaratory judgment declaring, *inter alia*, that Defendants' conduct in charging the LDW fees and Environmental Charges are improper and in violation of Florida statutory and common law.  While Plaintiffs seek to represent a nationwide class of consumers injured as a result of Defendant's conduct, as set forth in NationsRent's own Rental Agreement, Florida law applies to each of these claims.  *See* Ex. E, §4.10 ("The laws of the State of Florida shall govern the interpretation, validity and govern the performance of the terms of this contract.").  *See also* Order at 5-7.

> ### B.       The Class Should Be Certified

Federal Rule of Civil Procedure 23 governs class certification in federal court.  The plaintiff seeking class certification has the burden of proof.  *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000); *Heaven v. Trust Co. Bank*, 118 F.3d 735, 737 (11th

---

broad-sweeping exclusions completely eliminates the coverage that NationsRent implicitly represents that LDW provides, thereby rendering the paid-for "waiver" worthless and illusory. The Environmental Charge is equally deceptive and unfair because by itemizing the fee, NationsRent represents that the monies collected are used for environmental procedures, when in reality, the fee is nothing more than a hidden rental rate increase.  This conduct is tantamount to billing for a service that a merchant never provides.

[22]      The UCC – Leases chapter, Fla. Stat. §680.1081(1) provides:

> If the court as a matter of law finds a lease contract or any clause of a lease contract to have been unconscionable at the time it was made, the court may refuse to enforce the lease contract, or it may enforce the remainder of the lease contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

For the court to determine that a contract or contract clause is unconscionable, it must find both procedural and substantive unconscionability. *Powertel, Inc. v. Bexley*, 743 So. 2d 570 (Fla. 1st DCA 1999).  "Procedural unconscionability focuses on those factors surrounding the entering of the contract which add up to an absence of meaningful choice on the part of one of the parties to the contract as to the terms therein" while substantive unconscionability "focuses directly on those terms of the contract itself which amount to an outrageous degree of unfairness to the same contracting party." *Steinhardt v. Rudolph*, 422 So. 2d 884, 889 (Fla. 3rd DCA 1982). NationsRent's Rental Agreement constitutes a contract of adhesion, as the consumer lacks any meaningful choice as to the terms therein.  *See* Order at 10.  Moreover, the LDW's exclusions unfairly allocate the entire risk of loss to the lessee, and the Environmental Charge, which NationsRent represents is a pass-through charge for environmental-related expenditures, deceptively operates as a profit-generator.  As a result, NationsRent's Rental Agreement is both procedurally and substantively unconscionable.

Cir. 1997); *Morrison v. Booth*, 763 F.2d 1366, 1371 (11th Cir. 1985). To qualify for class certification, the plaintiff must prove the four requirements of Rule 23(a) and at least one of the standards of Rule 23(b) that is appropriate to the relief sought. *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1321 (11th Cir. 2008); *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1025 (11th Cir. 2001); *see also Franze v. Equitable Assurance*, 296 F.3d 1250, 1253 (11th Cir. 2002); *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001).

For the purposes of a motion for class certification, the court takes the factual allegations stated in the complaint as true. *See Medine v. Wash. Mut., F.A.*, 185 F.R.D. 366, 369 (S.D. Fla. 1998); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action . . . . Apparently, that court interpreted Rule 23 to authorize such a hearing as part of the determination whether a suit may be maintained as a class action. We disagree."); *Reese v. Miami-Dade County*, 209 F.R.D. 231, 232 (S.D. Fla. 2002) ("Class certification is strictly a procedural matter and the merits of the claims at stake are not considered when determining the propriety of the class action vehicle."). Here, however, even were the Court to "probe behind the pleadings,"[23] Plaintiffs have ample record evidence supporting each of the elements of Rule 23.

The four prerequisites of Rule 23(a) have commonly been referred to as: "numerosity, commonality, typicality and adequacy of representation." *Franze*, 296 F.3d at 1253 (quoting *Piazza*, 273 F.3d at 1346); *see also Murray v. Auslander*, 244 F.3d 807, 810 (11th Cir. 2001) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions, and that class treatment is superior to other available methods of adjudication.

### 1.      Similar Class Actions Have Been Certified in Florida

Class actions based on conduct similar to that at issue have been routinely certified. Indeed, courts routinely certify classes of victims of FDUTPA violations. *See, e.g., Veal*, 236 F.R.D. 572; *Pathman*, 885 So. 2d 1004; *Cole*, 965 So. 2d 1228; *Renaissance Cruises*, 738 So. 2d 436; *Davis*, 776 So. 2d 971. The claims in these cases, like here, principally involved violations of the FDUTPA. This Court should similarly grant class certification here.

---

[23]      *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008).

### 2.    Numerosity

The Class satisfies Rule 23(a)(1), which requires that a class be so numerous that joinder of all class members would be impracticable.  The Eleventh Circuit has held that while there is no fixed rule regarding numerosity, "generally less than twenty-one is inadequate, more than forty adequate, with numbers [in] between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir. 1986).  *See also Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594, 599 (S.D. Fla. 1991) (certifying a class of approximately 130 investors, and noting that the numerosity requirement is satisfied with as few as 25 or 30 members).  The proper focus, however, is not on numbers alone, but on "whether joinder of all members is practicable in view of the numerosity of the class and all other factors." *Holland v. Steele*, 92 F.R.D. 58, 63 (N.D. Ga. 1981); *see also Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986).

Here, NationsRent has charged illegal LDW fees to up to 1.4 million customers and Environmental Charges to approximately 975,000 customers.  Indeed, given the tremendous number of victims of NationsRent's illegal activities, Plaintiffs do not anticipate that Defendant will contest numerosity.

### 3.    Commonality

The second requirement of Rule 23, commonality, requires an assessment of whether Plaintiffs' claims raise ***at least one*** question of law or fact common to the members of the Class. Fed. R. Civ. P. 23(a)(2).   Commonality will be satisfied where questions of law refer to standardized conduct by the defendant toward members of the proposed class. *In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 428 (S.D. Fla. 1991) (citing *Patrykus v. Gomilla*, 121 F.R.D. 357, 361 (N.D. Ill. 1988)).  Establishing commonality, however, does not require complete identity of Plaintiffs' claims.   *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 696 (S.D. Fla. 1992).   More specifically, "'it is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions'." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004) (citing *In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 687, 697 (N.D. Ga. 2002)). Factual differences concerning treatment or damages, however, will not defeat a finding of commonality.   *Tapken v. Brown,* No. 90-961-CIV-MARCUS, 1992 WL 178984, at *25 (S.D. Fla. Mar. 13, 1992).   Factual distinctions that may exist are "far less important than the common issues bearing on the existence of a 'common

13

scheme' of misrepresentations and omissions." *Id*. at *28. Common issues of fact and law predominate if they have "a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 699 (N.D. Ga. 2001). Indeed, "[t]he Rule 23(a) requirement of commonality is not high, requiring only that resolution of the common questions affect all or a substantial number of the class members." *Collins v. Int'l Dairy Queen, Inc.,* 168 F.R.D. 668, 674 (M.D. Ga. 1996).

Plaintiffs easily satisfy the commonality requirement of Rule 23(a)(2) in that their claims raise several questions of law or fact common to the members of the Class. Plaintiffs present numerous common questions of law and fact justifying class treatment of this action, including the following:

(a)     Whether NationsRent's acts and practices constitute violations of Florida law for which Plaintiffs and members of the Class are entitled to recover restitution or damages or for which disgorgement of ill-gotten monies is appropriate;

(b)     Whether NationsRent has been unjustly enriched through the charging of LDW fees and Environmental Charges;

(c)     Whether Plaintiffs and the class are entitled to a declaratory judgment that NationsRent's conduct violated Florida law;

(d)     Whether NationsRent's acts and practices with respect to the LDW and Environmental Charge are deceptive and unfair;

(e)     Whether NationsRent's acts and practices with respect to the LDW and Environmental Charge are unconscionable;

(f)     Whether NationsRent's failure to engage in meaningful environmental clean up activity is a breach of its contracts with the Class;

(g)     Whether NationsRent's acts and conduct of billing customers for Environmental Charges is an unconscionable, deceptive and/or unfair practice that violates Florida law; and

(h)     Whether Plaintiffs and the Class are entitled to damages, and if so, what is the proper measure of damages.

*See*, *e.g.*, Compl., ¶56. These allegations demonstrate that the members of the Class were all aggrieved by a common course of conduct (*i.e.*, NationsRent's acts and practices with respect to LDW fees and Environmental Charges), and their claims are based on the same legal theories.

14

*See Murray*, 244 F.3d at 811 ("Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof.").

### 4.   Typicality

The typicality requirement of Rule 23(a) ensures that the class representative has the same interests as the class.  That is, "typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Busby*, 513 F.3d at 1322;  *see also Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984).  The typicality requirement, like commonality, is not demanding.  *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996).  Similarly, typicality does not require that all putative class members share identical claims.  Rather, it is only required that the claims of the named plaintiff have the same essential characteristics as the class at large because "a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences." *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985).

Here, there is no question that Plaintiffs' claims satisfy the typicality requirement of Rule 23.  Plaintiffs and the other Class members seek identical remedies under identical legal theories, and there is no antagonism or material factual variation between Plaintiffs' claims and those of the Class.  As discussed above, Plaintiffs and the Class seek identical relief under the FDUTPA and the UCC.  Indeed, NationsRent admits that its form contracts, which contain the Terms and Conditions of LDW, were ***uniform throughout the United States.***  Likewise, the amount charged by NationsRent in Environmental Charges – based on the type of equipment rented – was ***standard throughout all NationsRent locations***.  Finally, NationsRent admits that each of the Plaintiffs paid LDW fees and Environmental Charges.  *See* Snyder Dep. at 45-47, 49, 186.

Since Plaintiffs seek to prove that NationsRent "committed the same unlawful acts in the same method against an entire class . . . [which means that] all members of this class have identical claims," the typicality requirement of Rule 23(a)(3) is satisfied.  *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983); *accord Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 722-25 (11th Cir. 1987); *Busby*, 513 F.3d at 1323 (finding typicality prong satisfied where, like here, named plaintiff paid same disputed fee as other members of the class); *Veal*, 236 F.R.D. at 577 (finding typicality prong satisfied, and noting that "factual differences among the claims of the putative class members do not defeat certification.").  Here, and as NationsRent admits, there

can be no doubt that Plaintiffs' rental transactions are typical of those of other putative Class members.

####    5.    Adequacy

The final prerequisite of Rule 23(a) requires a showing that the representative party will fairly and adequately protect the interests of the class.  What constitutes adequate representation is a question of fact that depends upon the circumstances of each case and is entrusted to the discretion of the trial court.  *See* 7A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure: Civil* § 1765, at p. 271 (1986); *Kirkpatrick*, 827 F.2d at 728; *Schatzman v. Talley*, 91 F.R.D. 270, 272 (N.D. Ga. 1981).  The adequacy requirement of Rule 23(a)(4) encompasses two requirements: (1) the proposed representative has interests in common with, and not antagonistic to, the interests of the class; and (2) the plaintiff's attorneys are qualified, experienced and generally able to conduct the litigation.  *Kirkpatrick*, 827 F.2d at 726; *Hamilton Partners, Ltd. v. Sunbeam Corp.*, No. 99-CV-8275, 2001 WL 34556527, at *3 (S.D. Fla. July 3, 2001);  *see also Veal*, 236 F.R.D. at 578-579.

Here, Plaintiffs satisfy both prongs of the adequacy test of Rule 23(a)(4).  Plaintiffs do not have any interests antagonistic to the Class, and Plaintiffs are willing and able to vigorously prosecute this action on its behalf, as they have plainly demonstrated thus far.  *See* II.C., *infra*.

####    6.    Plaintiff's Counsel Should Be Appointed Class Counsel

Plaintiff and proposed Class counsel, Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") and Freed & Weiss, LLC ("F&W"), will vigorously prosecute this action.  In addition to satisfying the adequacy prong of Rule 23(a)(4), Coughlin Stoia and F&W also satisfy the considerations of Rule 23(g) and should be appointed as Class counsel.  Rule 23(g)(4) requires the court to appoint counsel who will fairly and adequately represent the Class.  Additionally, in appointing class counsel, Rule 23(g)(1)(A) requires the court to consider the following factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit in representing the class."

Concerning the adequacy of counsel, the Eleventh Circuit has noted that "adequate class representation generally does not require that the named plaintiffs demonstrate to any particular degree that individually they will pursue with vigor the legal claims of the class."  *Kirkpatrick*,

827 F.2d at 727.  Instead, the focus is on whether plaintiff's counsel exhibits the desire and expertise to prosecute a class action vigorously.  *Id.* at 726-27.  Plaintiffs and the Class are represented by highly competent counsel, who possess substantial experience litigating class action lawsuits on behalf of aggrieved consumers and are adequately prepared to prosecute this action.

First, Coughlin Stoia and F&W have, in fact, been vigorously pursuing this case since its inception, propounding and responding to discovery requests, producing documents, taking and defending depositions, investigating the factual and legal issues associated with this case, and taking all other steps necessary to move this action forward.  If appointed as Class counsel, Coughlin Stoia and F&W will continue to work to prove the claims being prosecuted by Plaintiffs on behalf of themselves and the Class.

Second, Coughlin Stoia and F&W are highly experienced in class action litigation.[24] Specifically, both firms have extensive experience in the prosecution and successful resolution of complex class actions in courts in this District and throughout the United States.  Moreover, Coughlin Stoia and F&W have demonstrated their willingness to commit substantial resources to representing the Class in this action through their efforts in prosecuting this action to date.  As such, because there should be no question about the competence of counsel to fairly and adequately represent the interests of the Class, the requirements of Rule 23(a)(4) and Rule 23(g) are satisfied.

### 7.    The Requirements of Rule 23(b)(3) Are Also Satisfied

In addition to the requirements of Rule 23(a), Plaintiffs also satisfy the requirements of Rule 23(b)(3), which states that common questions of law or fact must predominate over individual questions, and that class action treatment is superior to other available methods of adjudication.  As set forth below, this action meets the criteria set forth in Rule 23(b)(3).

### (1)    Predominance

In *Rutstein,* the Eleventh Circuit held that common questions of law or fact predominate over individual questions when the issues in the class action are subject to generalized proof that applies to the case as a whole.  211 F.3d at 1233.  Stated otherwise, in deciding whether common questions predominate under Rule 23(b)(3), courts generally focus on whether there are common

---

[24]    The firm résumé of Coughlin Stoia is attached hereto as **Exhibit L** and the firm résumé of F&W is attached hereto as **Exhibit M**.

liability issues that may be resolved efficiently on a class-wide basis.  *See*, *e.g.*, *Klay*, 382 F.3d at 1269.  Under this rule, however, "it is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Busby*, 513 F.3d at 1324.

The predominant issue here is whether NationsRent's conduct in charging unfair and deceptive LDW fees and Environmental Charges is unlawful.  There is no need to inquire into individual issues regarding NationsRent's consumers.  As discovery in this matter has confirmed, NationsRent has charged LDW fees to up to 1.4 million customers and Environmental Charges to approximately 975,000.  Resolution of these issues will predominate over any individual issues that may exist with respect to the Class, as only one body of evidence will be necessary to prove liability and mini-trials will not be required.  That is, these issues are susceptible to common proof because, as set forth above, NationsRent assessed both charges via form contracts and uniform policies and procedures.  *See Mortimore v. FDIC*, 197 F.R.D. 432, 438 (W.D. Wash. 2000) ("since this case involves the use of form contracts, it is particularly appropriate to use the class action procedure"); *Davis v. Cash for Payday, Inc.*, 193 F.R.D. 518, 522 (N.D. Ill. 2000) ("[c]laims arising out of form contracts are particularly appropriate for class action treatment").

In cases similar to this one, where plaintiffs claimed they were assessed improper charges, or made to pay for worthless services as part of a larger transaction, numerous courts have found the predominance requirement satisfied and granted certifcation.  *See, e.g., Veal*, 236 F.R.D. at 581-82 (claim that defendant auto dealerships sold an "Etch" theft deterrent product, which included a purported benefit recovery guarantee that was of little or no value, was certified where defendants used form contracts and uniform deceptive practices when selling the product); *Pathman*, 885 So. 2d 1005 (plaintiff's claims certified where it was alleged that furniture manufacturer's purported pass-through "shipping charges" actually included a substantial profit component that was retained by the manufacturer); *Violette v. P.A. Days, Inc.*, 214 F.R.D. 207 (S.D. Ohio 2003) (plaintiff's claims certified where it was alleged that auto dealer's charge for "Theft-Guard" theft deterrent product, which was included on standard form auto sales contract, was improper and not properly disclosed); *Johnson v. Rohr-Ville Motors*, 189 F.R.D. 363 (N.D. Ill. 1999) (plaintiffs' claims certified where they alleged, *inter alia*, that auto dealer included in sales transactions improper charge for GAP (guaranteed auto protection) insurance that was

actually worthless); *Weinberg v. Hertz Corp.*, 116 A.D.2d 1, 499 N.Y.S.2d 693 (N.Y. App. Div. 1986) (plaintiffs' claims certified where they alleged automobile rental corporation assessed improper charges as part of automobile rentals for a collision damage waiver and personal accident insurance, for refueling returned rental cars, and certain hourly charges when the vehicle was returned late); *Lazar v. Hertz Corp.*, 143 Cal. App. 3d 128, 191 Cal. Rptr. 849 (Cal. Ct. App. 1983) (plaintiffs' claims certified where they alleged automobile rental company's charge for gasoline — as specified in form rental agreement — when returning car was excessive and was misrepresented in agreement).

### (2)  A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Action

Rule 23(b)(3) lists four factors that the Court should consider in taking into account whether a class action is superior to other methods of adjudicating this action:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular form; (D) the difficulties likely to be encountered in the management of a class action.

*See* Fed. R. Civ. P. 23(b)(3)(A)-(D).  Additionally, in determining superiority, the "inability of the poor or uninformed to enforce their rights" and "the improbability that large numbers of class members would possess the initiative to litigate individually" are proper considerations. *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 318 (S.D. Fla. 2001).

A review of the factors listed in Rule 23(b)(3) makes clear that a class action is the superior method of adjudicating this controversy.  There are several principal reasons why it is desirable to litigate multiple parties' claims in a single forum.  *Klay*, 382 F.3d at 1271.  First, class actions "offers substantial economies of time, effort, and expense for the litigants . . . as well as for the [c]ourt."  *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 700 (S.D. Fla. 2004) (holding, separate trials for claims that could be tried together would be costly, inefficient, and would burden the court system by forcing individual plaintiffs to repeatedly prove the same facts and make the same legal arguments before different courts); *Upshaw v. Ga. Catalog Sales, Inc.*, 206 F.R.D. 694, 701 (M.D. Ga. 2002) ("[E]ven if sufficient incentive existed for individual claimants to pursue their claims separately, class action treatment is far superior to having the same claims litigated repeatedly, wasting valuable judicial resources.").

Second, the Supreme Court has recognized that "[c]lass actions . . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . [M]ost of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).  As set forth above, NationsRent is alleged to have willfully violated the rights of up to 1.4 million consumers during the relevant period.  Each customer, however, may have no more than $50 in damages.  Thus, while there is an enormous number of potential members of the Class, a majority will not, in all likelihood, pursue individual lawsuits. Additionally, it would be extremely costly for each individual consumer to proceed against a large corporation such as NationsRent.  *See Powers v. Stuart-James Co.,* 707 F. Supp. 499, 504 (M.D. Fla. 1989) ("[i]t appears to the Court that the judicial system, the potential class members, the litigants, counsel for the parties, and the public will all benefit from class certification because the time and money of all parties will be efficiently used."); *Upshaw*, 206 F.R.D. at 701 ("[E]ven if sufficient incentive existed for individual claimants to pursue their claims separately, class action treatment is far superior to having the same claims litigated repeatedly, wasting valuable judicial resources.").  Thus, in light of the number of potential claimants and the cost and time necessary to litigate each separate claim, it is certainly desirable to concentrate this action in this forum and prevent the duplication of effort and possible inconsistent results. Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of this action.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court enter an order granting this motion, certify the Class defined by Plaintiffs, appoint Plaintiffs as the Representatives of the Class, and appoint Plaintiffs' attorneys as Class counsel.

DATED:  August 15, 2008

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
STUART A. DAVIDSON
Florida Bar No. 0084824
sdavidson@csgrr.com
MICHAEL L. GREENWALD
Florida Bar No. 0761761
mgreenwald@csgrr.com


            s/ MICHAEL L. GREENWALD
            MICHAEL L. GREENWALD

120 East Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
Telephone:  561/750-3000
561/750-3364 (fax)

FREED & WEISS LLC
PAUL M. WEISS
paul@freedweiss.com
ERIC BRUNICK
ebrunick@freedweiss.com
111 West Washington Street, Suite 1331
Chicago, Illinois  60602
Telephone: 312/220-0000
312/220-7777 (fax)

**Co-Lead Counsel for Plaintiffs**

ARONOVITZ JAFFE
TOD ARONOVITZ
Florida Bar No. 186430
ta@aronovitzlaw.com
STEVEN R. JAFFE
Florida Bar No. 0390770
srj@aronovitzlaw.com
Suite 2700 – Museum Tower
150 W. Flagler Street
Miami, Florida  33130
Telephone: 305/372-2772
305/375-0243 (fax)

**Plaintiffs' Liaison Counsel**

21

LAW OFFICES OF MAHAFFEY & LEITCH
JOHN D. MAHAFFEY, JR.
Florida Bar No. 98690
attysmlb@bellsouth.net
2461 West State Road 426, Suite 1001
Oviedo, Florida 32765
Telephone:  407/894-2081
407/894-3852 (fax)

HOLZER, HOLZER, & FISTEL LLC
COREY D. HOLZER
cholzer@holzerlaw.com
1117 Perimeter Center West, Suite E-107
Atlanta, Georgia 30338
Telephone:  770/392-0090
770/392-0029 (fax)

FEAZELL & TIGHE LLP
AUSTIN TIGHE
6300 Bridgepoint Parkway
Bridgepoint 2, Suite 220
Austin, Texas  78730
Telephone: 512/372-8100

KITRICK AND LEWIS CO., L.P.A.
MARK KITRICK
MARK LEWIS
515 E. Main Street, Suite 515
Columbus, Ohio  43215-5398
Telephone: 614/224-7711
614/225-8985 (fax)

***Attorneys for Plaintiffs and the Class***

22

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 15, 2008, I served the foregoing document on the following via email:

Lawrence Silverman, Esq.
Scott Cosgrove, Esq.
SILVERMAN COSGROVE & SAMMATARO
One Biscayne Tower
2 South Biscayne Boulevard, Suite 2650
Miami, Florida 33131
Telephone: (305) 377-1666

*Counsel for Defendants*

                                                          _____s/ MICHAEL L. GREENWALD_____
                                                            MICHAEL L. GREENWALD