UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 06-60924-CIV-BROWN

In Re NATIONSRENT RENTAL FEE
LITIGATION
_____/

**JOINT DECLARATION OF CO-LEAD COUNSEL IN SUPPORT OF FINAL
APPROVAL OF CLASS ACTION SETTLEMENT AND AN AWARD OF ATTORNEYS'
FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

STUART A. DAVIDSON and PAUL M. WEISS, hereby declare as follows:

1. By Order of this Court on February 24, 2009, and by this Court's preliminary approval order, we, along with our two firms Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") and Freed & Weiss, LLC ("Freed & Weiss") were appointed Co-Lead Counsel for the Plaintiffs (sometimes hereinafter collectively referred to as "Class Counsel"). We make this declaration pursuant to Fed. R. Civ. P. 23(e) in support of Plaintiffs' Motion for Final Approval of Class Action Settlement and in support of Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses. We have personally and actively worked on this litigation, along with other members of our firms and other Plaintiffs' counsel under our direction, and have personal knowledge of the matters described below.

2. The purpose of this declaration is to summarize the factual and procedural history of this consolidated litigation, including the initial filing and investigation, motion practice, settlement negotiations and nature of counsel's time and expenses.

**I.      BACKGROUND**

3. Beginning on June 26, 2006, our firms, with co-counsel, initiated two consumer class actions in this District, alleging that NationsRent improperly NationsRent Companies, Inc. and NationsRent, Inc. (collectively, "NationsRent") improperly included certain fees in NationsRent's

1

equipment rental contracts (the "Rental Contracts") – the loss damage waiver ("LDW") fee equal to between 12% and 14% of the Rental Contract, and an "Environmental Fee" purportedly used to cover NationsRent's own overhead for environmental-related expenses.

4. Unlike in some consumer cases, these actions were not initiated on the heels of an announcement of a government investigation or enforcement action. They were solely developed and prosecuted by Class Counsel. Moreover, as this Court is likely aware, it is not uncommon for "copycat" lawsuits to be filed by other members of the competitive plaintiffs' bar if they believe there is even a reasonable probability of success in the overall litigation. That did not happen here.

5. Before filing, our firms conducted extensive investigations. These pre-suit investigations included, but were not limited to: fact research in the nature of consumer complaints; retention of and direction to private investigators; interviews of confidential witnesses (as referenced in initial complaints, the Consolidated First Amended Complaint and the Consolidated Second Amended Complaint); legal research into the applicability of NationsRent's choice of law agreement; and legal research into appropriate claims of relief and venue.

6. The first-filed case was *Horton, et al. v. NationsRent, Inc.*, filed in this District on June 26, 2006 by Freed & Weiss and co-counsel. On July 17, 2006, Coughlin Stoia, with co-counsel, also filed the action entitled *Jacov v. NationsRent Companies, Inc., et al* in this District.

7. The complaints asserted claims for a Declaratory Judgment, violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq.* ("FDUTPA"), violations of Florida's Uniform Commercial Code, Fla. Stat. §680.1081 ("UCC"), and for injunctive relief.

8. On July 31, 2006, the Court consolidated the two above-referenced actions against NationsRent under the caption *In re NationsRent Rental Fee Litigation*, Case No. 06-60924-CIV-

BROWN (the "Action"), and appointed Coughlin Stoia and Freed & Weiss as interim Co-Lead Counsel for plaintiffs.

9. Between July 31, 2006 and August 8, 2006, our firms researched and prepared a Consolidated Amended Class Action Complaint (the "Consolidated Complaint"), which was filed on August 8, 2006 on behalf of plaintiffs Todd Horton ("Horton"), Brad Barnard ("Barnard") and David Jacov ("Jacov"). In connection with preparation of the complaint, we, along with our investigators, spoke with numerous confidential sources who previously had worked for NationsRent and who provided a substantial amount of information regarding NationsRent's environmental practices.

10. The complaint, supported by these confidential sources, alleged that the terms of LDW were illusory and provided no benefits to NationsRent's customers at the time the Rental Contracts were signed, and that the Environmental Fee was deceptive and unfair in light of the alleged disclosures and representations to NationsRent's customers concerning the fee. Plaintiffs asserted claims against NationsRent under FDUTPA and Florida's UCC, as well as common law claims of breach of contract, unjust enrichment, money had and received, and declaratory relief.

11. In addition to preparing the consolidated complaint, we also began discovery in the Summer of 2006. In August 2006, we prepared and served a first set of discovery requests on NationsRent. In addition, on September 5, 2006, we served Third Party Subpoenas *Duces Tecum* on US Filter and Safety-Kleen, two outside vendors who allegedly provided environmental clean-up and waste disposal services for NationsRent, seeking documents concerning NationsRent's environmental costs and expenses.

12. On September 7, 2006, NationsRent moved to dismiss the Consolidated Complaint and, three days later, moved to stay discovery pending the Court's decision on NationsRent's motion

to dismiss. NationsRent's motion to stay was premised on the Eleventh Circuit's decision in *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353 (11th Cir. 1997).

13.     Our firms spent numerous hours researching and briefing NationsRent's comprehensive motion to dismiss and motion to stay discovery.

14.     On October 10, 2006, Judge Cooke denied NationsRent's motion to stay discovery, and accepted our arguments that the Eleventh Circuit's decision in *Chudasama* did not control.

15.     Between November 2006 and September 2007, we engaged in a substantial amount of document discovery with NationsRent, including preparing additional document requests to NationsRent, coordinating discovery responses and document production by plaintiffs, and reviewing discovery responses and documents produced by NationsRent. Additional document discovery took place throughout the pendency of the Action, as additional information came to light. Moreover, we prepared and filed a motion to compel in September 2007, which was granted in part, and denied in part. By the end of this Action, NationsRent had produced nearly 25,000 pages of documents to plaintiffs and millions of electronic records, which were reviewed and analyzed by plaintiffs' counsel.

16.     On February 1, 2007, we prepared and filed a Consolidated Second Amended Class Action Complaint on behalf of plaintiffs, which NationsRent moved to dismiss.

17.     Following significant research and briefing on NationsRent's motion to dismiss, the Court denied NationsRent's motion to dismiss plaintiffs' Consolidated Second Amended Class Action Complaint.

18.     On March 21, 2008, NationsRent filed its Answer and Affirmative Defenses to the Consolidated Second Amended Class Action Complaint in which, among other things, NationsRent denied liability for the claims asserted by plaintiffs.

19. During the month of April 2008, NationsRent's counsel took the depositions of each of plaintiffs Horton, Barnard and Jacov. Our firms, along with co-counsel, spent significant time and expense preparing our clients for and defending these depositions.

20. Between April and July 2008, we prepared for and took the depositions of the following NationsRent witnesses:

    (a) Charles Snyder, NationsRent's Rule 30(b)(6) designee;

    (b) Craig Jonell, NationsRent's Rule 30(b)(6) designee;

    (c) Thomas Hoyer, NationsRent's former CFO; and

    (d) Robert Schiller, NationsRent's former Controller.

21. Between August and September 2008, we spent significant time researching and briefing the propriety of class certification in this Action. We sought to certify a class of all former NationsRent customers who paid either the LDW fee or the Environmental Fee, to appoint plaintiffs Horton, Barnard and Jacov as class representatives, and the law firms of Coughlin Stoia and Freed & Weiss as class counsel.

22. Class certification briefing by the parties was extraordinarily challenging and highly contentious, particularly on the issue of whether NationsRent's "choice of law" provision in its Rental Contracts, mandating the application of Florida law, allowed Florida state statutory and common law claims to be certified because only one state's laws would apply to all class members nationwide. Indeed, as was evident from the briefing in this case, it is never easy to obtain class certification, particularly in cases brought on behalf of a nationwide class of consumers.

23. What is more, and notwithstanding tremendous timing challenges and commitments to multiple other pending cases, while the parties were briefing class certification issues, the parties each researched, briefed, and filed record-laden cross-motions to partial or final summary judgment.

5

We researched and prepared an opposition memorandum to NationsRent's motion for partial summary judgment, and did the same for our reply memorandum in support of plaintiffs' motion for summary judgment as to liability.

24.     On November 18, 2008, the Court held oral argument and a limited evidentiary hearing on plaintiffs' Motion for Class Certification. In connection with this hearing, our firms, along with co-counsel, spent a substantial amount of time preparing for oral argument and preparing for cross-examination of any witnesses NationsRent ultimately called to testify at the hearing.

25.     On February 4, 2009, the parties participated in good faith in a mediation conference before mediator David H. Lichter, Esq., but reached an impasse.

26.     On February 11, 2009, the Court held a second hearing on discrete issues concerning plaintiffs' Motion for Class Certification. Again, to prepare for this hearing, our firms, along with co-counsel, spent time researching the issues raised by the Court in its order and preparing to cogently address these issues at the scheduled hearing.

27.     On February 24, 2009, the Court in the Action granted in part, and denied in part, plaintiffs' Motion for Class Certification, reported at *In re NationsRent Rental Fee Litig.*, No. 06-60924-CIV, 2009 WL 636188, at *1 (S.D. Fla. Feb. 24, 2009). The Court granted class certification of plaintiffs' claims related to the Environmental Fee disclosures, except the claim brought under FDUTPA, and denied class certification as to all claims related to the LDW terms. The Court also appointed Jacov as class representative, and declined to appoint either Horton or Barnard as class representatives. Coughlin Stoia and Freed & Weiss were appointed as class counsel. The Class certified by the Court was defined as: "all customers of NationsRent who rented equipment from any store owned or operated by NationsRent, or any of its affiliated companies, between June 1, 2003 and August 30, 2006, and paid an Environmental Fee."

28. Immediately following the Court's class certification decision, our firms, along with co-counsel, conducted legal research regarding the likelihood of success of a motion for reconsideration and/or a petition for permission to appeal to the Eleventh Circuit, pursuant to FRAP 23(f). Ultimately, we decided to prepare and file a motion for reconsideration of the Court's class certification order with respect solely to the issue of whether FDUTPA applied to non-Florida residents, such as plaintiffs, in light of the Florida choice of law provision in the Rental Contracts. This motion was denied on March 30, 2009.

29. On March 9, 2009, NationsRent filed a Petition to Appeal the class certification order with the Eleventh Circuit, and we researched, prepared and filed a separate Petition to Appeal on April 1, 2009. Following additional briefing by the parties with the Eleventh Circuit, both petitions were denied. Clearly, there was a risk that this Court's order granting, in part, class certification would be reversed by the Eleventh Circuit.

30. Once this Court's class certification decision was final, and based on our investigation concerning the lack of proper disclosure of the Environmental Fee by Sunbelt Rental's, Inc. ("Sunbelt"),[1] our firms prepared and filed a Class Action Complaint against Sunbelt in the Western District of North Carolina, styled *Andrew M. Weissing, Inc. d/b/a Weissing Construction v. Sunbelt Rentals, Inc.*, Case No. 3:09-CV-213 (W.D.N.C.) (the "Sunbelt Action"), alleging claims under North Carolina law.

31. Following the denial of the parties' respective FRAP 23(f) petitions by the Eleventh Circuit, we conducted extensive settlement discussions and arm's-length negotiations with counsel

---

[1] Sunbelt merged with NationsRent on or about August 31, 2006, and acquired all of NationsRent's assets and liabilities, and currently operates the stores previously operated by NationsRent. Consequently, NationsRent customers became Sunbelt customers, and were transferred into the Sunbelt system.

for NationsRent and Sunbelt, in an effort to accomplish a global compromise and settlement of the claims asserted in the Action.

32. During these negotiations, our firms and clients recognized that, by denying class certification to all of the claims relating to the LDW fee, the Court had effectively gutted 90% of plaintiffs' case, leaving only claims relating to the Environmental Fees at issue, which constituted less than $2.50 per transaction.

33. Indeed, after significant pre-filing and post-filing investigation, including witness interviews, over a year of discovery, substantive research regarding all aspects of plaintiffs' motion for class certification and the appeals therefrom, as well as the parties' cross- motions for summary judgment motions, our firms, as Class Counsel, were extremely well-informed of the strengths and weaknesses of this Action during all settlement discussions.

## II. SETTLEMENT DISCUSSIONS WERE ADVERSARIAL AND AT ARM'S LENGTH

34. As noted above, following the denials of the parties FRAP 23(f) petitions, the parties held numerous telephone conferences to discuss the possibility of settlement. Negotiations can only be characterized as extraordinarily contentious. It was apparent that both sides had incentives for settlement, being well-informed of their litigation risks. However, both sides also aggressively held to their positions, and it began to appear after a number of months that settlement would not occur at all.

35. Settlement negotiations were at all times arm's length. On behalf of Jacov and Weissing, our firms devoted many hours to strategizing, devising settlement terms, developing responses to Defendants' positions, and exchanging information. Negotiation sessions often ended in impasse, resulted in only incremental progress or at times dismantled previous accomplishments. Plaintiffs believe the difficulty of negotiations was primarily driven by NationsRent's and Sunbelt's

unwavering positions throughout that they would prevail on summary judgment, would not pay past damages to hundreds of thousands of class members on Environmental Fee claims that were valued at only a few dollars each, *and* by plaintiffs' position that, under no circumstances, could plaintiffs agree to a release of claims relating to the LDW fee, which was not certified by the Court.

36. After many weeks of negotiation, the parties finally approved a settlement that directly addressed the very problem plaintiffs had with the Environmental Fee assessed by NationsRent and Sunbelt – the inadequate disclosures concerning the fee's purpose and the use of the money collected from the assessment. The parties agreed to extensive therapeutic changes with respect to the Environmental Fee, such that Sunbelt's form Rental Contracts will now disclose on the reverse side with Other "Additional Terms & Conditions" the following:

> __. **Environmental Fee.** To promote a clean, and sustainable environment, Sunbelt takes various measures to comply with federal and state environmental regulations, as well as with Sunbelt's own policies. Sunbelt also incurs a wide range of environmental related expenses (both direct and indirect). These expenses may include waste disposal, construction/maintenance of cleaning facilities, acquisition of more fuel efficient equipment, labor costs, administration costs, etc. To help defray these and other costs, Sunbelt charges an environmental fee in connection with certain rentals. The fee is not a tax or governmentally mandated charge. It is not designated for any particular use or placed in an escrow account. Rather, it is a fee that Sunbelt collects as revenue and uses at its discretion.

The parties have further agreed that Sunbelt will disclose on the front side of its form Rental Contract an express reference to the reverse side to understand the basis for the Environmental Fee, and will also make disclosures regarding the Environmental Fee on its website, http://www.sunbeltrentals.com/, in a form substantially similar to the disclosure listed in the Rental Contract.

37. The parties moved for preliminary approval on September 29, 2009. On October 13, 2009, the Court granted preliminary approval.

38.     The benefits achieved on behalf of consumers, while perhaps not extraordinary, are a result of three years worth of considerable effort and expense,[2] and a process driven by the dual goals of delivering maximum possible relief to consumers while, to the greatest extent possible, minimizing risk and delay in delivering that relief.

### III.    QUALIFICATIONS OF COUNSEL

39.     Class Counsel is comprised of some of the most reputable and skilled plaintiffs' complex litigation firms.  Both firms have several decades of experience in complex litigation and are among the most reputable and skilled plaintiffs' complex litigation firms in the nation.  [*See* Dkt. No. 111, Exh.'s L-M (firm resumes and professional biographies)].

40.     Class Counsels' thorough investigation, intense involvement, and due diligence have made them fully familiar with the facts and law of the case and the risks involved in the further prosecution of the Action.  As such, Class Counsel strongly recommend that the Court approve the Settlement.

### IV.    REACTION OF THE CLASS

41.     Reaction of the class to a settlement is an important fact to be weighed in considering its fairness, reasonableness and adequacy.  This nationwide Settlement has been extremely well-received by the Settlement Class.  In response to the extensive notice plan, which was published in 13 trade magazines, 11 major metropolitan and national newspapers, and a construction e-weekly newspaper on the Internet, not one single objection to any aspect of the Settlement was submitted.  This is a true testament to the Settlement and its value.

---

[2]     While not necessarily indicative of the amount of effort expended by counsel, it is nevertheless worth noting that there are over 234 docket entries on the Clerk's CMF/ECF docket, as of March 11, 2010, many of which demonstrate substantive briefing on many important issues.

42.     In October 2009, after required notice of the Settlement was provided pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1715(b) [*see* Dkt. No. 228], and the Preliminary Approval Order, not one of the 50 state attorneys general expressed a single concern with the proposed Settlement.

43.     Thus, the Settlement has been extremely well-received by the entire Class and state governments. Such an extremely positive reaction is a factor that strongly militates in favor of the Settlement.

## V.     RISKS OF CONTINUED LITIGATION

44.     The claims in this case focus on whether consumers were deceived in paying the LDW fee and Environmental Fee. The claims relating to the LDW fee centered around the question of whether renters of NatonsRent's equipment received any benefits from the fee if the exclusions swallowed any purported coverage and NationsRent had the unilateral ability to construe those exclusions. The claims relating to the Environmental Fee concerned the fact that the monies collected from assessing the fee were not being directly used for environmental-related activities.

45.     However, as noted above, this Court's class certification order gut the entirety of plaintiffs' LDW fee claims, which constituted the bulk of plaintiffs' claims and were valued at approximately $180 million. That left for trial the claims relating to the Environmental Fee, which, while valued at approximately $18 million, given the large number of class members, amounted to less than $2.50 per transaction.

46.     Moreover, while plaintiffs would have argued that it was a breach of contract for NationsRent and Sunbelt to not disclose that monies collected from the Environmental Fee were not directly used for environmental purposes, NationsRent and Sunbelt would have argued – as they have done from the onset – that there was no legal requirement that monies collected from the Environmental Fee be directly used for environmental purposes, and that NationsRent's and

11

Sunbelt's actual, provable environmental expenses dwarfed the amount collected from the Environmental Fee.

47. Put simply, assuming that the parties' cross-motions for summary judgment had been denied, continuing this litigation to trial would require significant testimony and additional pre-trial motion practice, all at risk of relief to the class. Class Counsel submit, however, that the Settlement reached potentially delivers the best relief possible under the circumstances, but the delay and expense of continued litigation has been avoided entirely.

48. Thus, this action, like all complex litigation against a well-resourced company represented by highly skilled defense counsel, has inherent risks. Plaintiffs face risk of losing summary judgment, and also face the general risk of sustaining victory at trial against inevitable appeals, or simply losing at trial with an unpredictable jury.

49. In contrast, this Settlement offers certain and immediate relief, in the form of much needed reforms to the way Sunbelt discloses the Environmental Fee to all of its customers. The Settlement provides for a recovery where the risk of obtaining nothing was more than a possibility. Based on our collective experience, such a result is the absolute best outcome for this litigation.

## VI.     ATTORNEYS' FEES, LITIGATION EXPENSES, AND INCENTIVE AWARDS

50. Class Counsel respectfully request an award of attorneys' fees and reimbursement of litigation expenses in the aggregate of $1.1 million, which NationsRent and Sunbelt have agreed not to oppose. This amount was subject of an entirely separate negotiation *after* all substantive terms of settlement had already been negotiated.

51. The Notice sent to Settlement Class Members informed them that Class Counsel intended to apply for an award of attorneys' fees and reimbursement of litigation expenses in the

aggregate of up to $1.1 million. As detailed below, with reference to accompanying exhibits, this amount reflects a *negative* lodestar multiplier of (0.53).

52. The Notice also expressly advised the Settlement Class Members that the Court would consider whether to approve the request for attorneys' fees and reimbursement of expenses. Notwithstanding the extensive Notice program, not one objection from the hundreds of thousands of Class members has been made relating to the payment of legal fees.

53. Class Counsel believe that the Settlement provides important benefits for the Settlement Class. The Settlement must be viewed in light of the risks surrounding the merits of the case, including those related to causation and liability, the risk of losing summary judgment, and the risk of obtaining no recovery at all. The Settlement must also be viewed in light of the fact that, as this Court rightly assumed, even if there was a monetary recovery in this case, the administrative and notice costs would easily swallow any such recovery based on the enormous class size.

54. Class Counsel have undertaken this action on a fully contingent basis. Had plaintiffs not prevailed or achieved a favorable settlement in this action, Class Counsel would have sustained a substantial financial loss. Class Counsel committed substantial resources to this action and assumed entirely the risk of non-payment to represent the Settlement Class.

55. Finally, the quality of the work performed by Class Counsel in attaining the settlement should also be evaluated in light of the quality of the opposition. Defendants were represented by prominent attorneys with the law firms of Akerman Senterfitt and Kasowitz, Benson, Torres & Friedman LLP.

56. Based upon each firm's reported lodestar, summarized in the accompanying plaintiffs' counsel declarations and in **Exhibit A**, plaintiffs' counsel have a total collective lodestar, which does not include a significant portion of the time spent on this application or on papers in

support of final approval, of $1,843,477.75, and litigation expenses in an aggregate amount of $121,593.17.

57.     Subtraction of litigation expenses from the requested fee award of $1.1 million, yields $978,406.83. That amount, divided by the total lodestar amount of $1,843,477.75, yields a negative multiplier of (0.53).

58.     **Exhibit B** hereto is a detailed summary indicating the amount of time spent by the partners, attorneys and other professional support staff of Coughlin Stoia who were involved in this litigation, and the lodestar calculation based on the firm's historical billing rates from inception of the case through January 29, 2010. The schedule was prepared from contemporaneous, daily time records regularly prepared and maintained by Coughlin Stoia.

59.     The hourly rates for the partners, attorneys and professional support staff in Coughlin Stoia included in Exhibit B are the same as the usual and customary hourly rates charged for their services in similar complex class action litigation. The total number of hours expended on this litigation by Coughlin Stoia from inception through January 29, 2010 is 2,042 hours. The total lodestar for Coughlin Stoia is $987,101.25. As detailed in **Exhibit C** hereto, Coughlin Stoia has incurred a total of $84,173.17 in unreimbursed expenses in connection with the prosecution of this litigation.

60.     **Exhibit D** hereto is a detailed summary indicating the amount of time spent by the partners, attorneys and other professional support staff of Freed & Weiss who were involved in this litigation, and the lodestar calculation based on the firm's historical billing rates from inception of the case through January 29, 2010. The schedule was prepared from contemporaneous, daily time records regularly prepared and maintained by Freed & Weiss.

61.     The hourly rates for the partners, attorneys and professional support staff in Freed & Weiss included in Exhibit D are the same as the usual and customary hourly rates charged for their services in similar complex class action litigation. The total number of hours expended on this litigation by Freed & Weiss from inception through January 29, 2010 is 858.60 hours. The total lodestar for Freed & Weiss is $372,025.00. As detailed in **Exhibit E**, Freed & Weiss has incurred a total of $27,272.73 in unreimbursed expenses in connection with the prosecution of this litigation.

62.     **Exhibit F** hereto is a detailed summary indicating the amount of time spent by attorneys Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L., whose attorneys were involved in this litigation, and the lodestar calculation based on their historical billing rates from inception of the case through January 29, 2010. The schedule was prepared from contemporaneous, daily time records regularly prepared and maintained by Farmer, Jaffe and other firms attorneys at Farmer, Jaffe were affiliated with during the course of this litigation.

63.     The hourly rates for Farmer, Jaffe included in Exhibit F are the same as the usual and customary hourly rates charged for their services in similar complex class action litigation. The total number of hours expended on this litigation by Farmer, Jaffe from inception through January 29, 2010 is 670.75 hours. The total lodestar for Farmer, Jaffe is $320,627.50. As detailed in **Exhibit G**, Farmer, Jaffe has incurred a total of $9,475.67 in unreimbursed expenses in connection with the prosecution of this litigation.

64.     **Exhibit H** hereto is a detailed summary indicating the amount of time spent by the partners, attorneys and other professional support staff of Holzer Holzer & Fistel, LLC who were involved in this litigation, and the lodestar calculation based on the firm's historical billing rates from inception of the case through January 29, 2010. The schedule was prepared from

15

contemporaneous, daily time records regularly prepared and maintained by Holzer Holzer & Fistel, LLC.

65.     The hourly rates for the partners, attorneys and professional support staff in Holzer Holzer & Fistel, LLC included in Exhibit H are the same as the usual and customary hourly rates charged for their services in similar complex class action litigation. The total number of hours expended on this litigation by Holzer Holzer & Fistel, LLC from inception through January 29, 2010 is 347.6 hours. The total lodestar for Holzer Holzer & Fistel, LLC is $163,724.00. As detailed in **Exhibit I**, Holzer Holzer & Fistel, LLC has incurred a total of $671.60 in unreimbursed expenses in connection with the prosecution of this litigation.

66.     The expenses incurred in this action are reflected on the books and records of our respective firms. These books and records are prepared from expense vouchers, check records and other source materials and represent an accurate recordation of the expenses incurred.

67.     Class Counsel request that the Court approve incentive awards for the one certified class representative, Mr. Jacov, who filed one of the original actions, was certified as class representative by the Court, and who represented the Settlement Class throughout this litigation. No objection has been made to the proposed individual incentive award of $2,500.

68.     Mr. Jacov was integral in providing the factual context for assisting Class Counsel in analyzing the claims and evidence. Of crucial importance was his desire and willingness to bring this action in the first place. From the beginning, he dedicated himself to the litigation, conferring with Class Counsel on many occasions, gathering information responsive to discovery, sitting for a lengthy deposition, conferring extensively on settlement, and monitoring the status of the case. Based on the record, without the initiation of his lawsuit and the others, it appears doubtful that any action would have been taken.

## VII.   CONCLUSION

69.   For all of the reasons stated above and in the concurrently-filed memoranda in support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plaintiffs' Motion for Award of Attorneys' Fees and Reimbursement of Litigation Expenses, Class Counsel respectfully request that the proposed Settlement be finally approved, the requested attorneys' fees and reimbursement of litigation expenses be awarded, and the requested incentive award be awarded.

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 22, 2010 in Boca Raton, Florida.

*s/Stuart A. Davidson*
Stuart A. Davidson

Executed on March 22, 2010 in Chicago, Illinois.

*s/Paul M. Weiss*
Paul M. Weiss

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 22, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that a copy was served upon the attorney of record for each other party through the Court's electronic filing service.

*s/Stuart A. Davidson*
Stuart A. Davidson